IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-HC-2180-FL

| | | |
|---|---|---|
| JOHN WAYNE SIMMONS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ENNIS OATES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, a state inmate, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter came before the court on the motion for summary judgment (DE 5) pursuant to Federal Rule of Civil Procedure 56 of respondent Ennis Oates ("respondent"), which was fully briefed. The issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment.

**STATEMENT OF CASE**

On March 6, 2009, petitioner, in the New Hanover County Superior Court, was convicted of six counts each of statutory rape, statutory sex offense, and incest. State v. Simmons, 204 N.C. App. 211, 694 S.E.2d 522, at *1 (2010). The convictions were consolidated for judgment and petitioner was sentenced to two consecutive terms of a minimum of two hundred eighty-eight (288) months imprisonment and a maximum of three hundred fifty-five (355) months imprisonment. Id.

at *2. The North Carolina Court of Appeals subsequently found no prejudicial error in petitioner's criminal judgments. Id. at *4.

On July 2, 2011, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the New Hanover County Superior Court, which was denied on November 21, 2011. Resp.'t's Mem. Exs. 8. On January 12, 2012, petitioner filed a pro se petition for a writ of certiorari in the North Carolina Court of Appeals. Id. Ex. 9. Then, on January 20, 2012, petitioner filed a "Motion Requesting to be Allowed to Withdraw Writ of Certiorari." Id. Ex. 10. On January 23, 2012, the court of appeals both dismissed without prejudice petitioner's petition for a writ of certiorari and granted his motion to withdraw. Id. Ex. 10.

On February 24, 2012, petitioner filed a "Motion to Reconsider Motion for Appropriate Relief to Include Newly Discovered Evidence" in the superior court. Id. Ex. 12. The superior court denied petitioner's motion to reconsider. Id. Ex. 13.

On May 29, 2012, petitioner filed a second petition for a writ of certiorari in the North Carolina Court of Appeals, challenging both the denial of his MAR and his motion to reconsider. Id. Ex. 14. The court of appeals subsequently denied petitioner's certiorari petition. Id. Ex. 16.

On July 25, 2012, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges several claims based upon his trial counsel's alleged ineffective assistance. Petitioner also alleges the following: (1) his conviction was obtained in violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution; (2) the trial court lacked subject matter jurisdiction to convict him; and (3) the State knowingly presented perjured testimony. Respondent filed a motion for summary judgment, which was fully briefed.

## STATEMENT OF FACTS

The facts as summarized by the North Carolina Court of Appeals are as follows:

> The State presented evidence tending to show that during the summer of 2001, defendant's biological daughter ("Sandra") moved from Shelby to Wilmington to live with defendant. At the time, Sandra, who was born 6 September 1985, was fifteen years old. Sandra testified that shortly after moving in with defendant in June 2001, she and defendant engaged in a food fight. As she was cleaning herself off with a water hose, defendant inserted his hands inside her shirt and touched her breasts. The next morning defendant came into her bedroom and performed cunnilingus on her. Either that day or the next, defendant engaged in sexual intercourse with her. Thereafter, at least once per week during that summer defendant engaged in oral sex and vaginal intercourse with Sandra. Just before Sandra turned sixteen in September 2001, defendant and Sandra moved to Florida.
>
> The sexual activity continued until Sandra was twenty years old and she moved in with a female friend and her parents. Sandra told her friend's father and her friend about the sexual activity she had been having with her father. The friend's father told Sandra's maternal aunt about the abuse and the maternal aunt called law enforcement.
>
> Defendant confessed to having sexual activity with his daughter when asked about it by the friend's father. About a week after Sandra moved out of his residence, defendant confessed to another friend that he had been having sex with Sandra and that he had impregnated her and paid for an abortion. A fellow inmate at the New Hanover County Detention Facility testified that defendant told him that he had engaged in sexual activity with his daughter and had impregnated her, and that defendant showed him a photograph of a female who had a birthmark in her private area which defendant indicated was similar to one in his daughter's private area. The inmate received nothing in exchange for his testimony given that he is currently serving a life sentence on drug-related convictions.
>
> The court submitted special verdicts to the jury to determine whether North Carolina had jurisdiction to try defendant regarding acts which allegedly occurred from 1 August 2001 through 31 August 2001. The jury determined that North Carolina did not have jurisdiction to try defendant for acts occurring during that time frame. The jury

>     found defendant guilty of acts occurring between 1 June 2001 and 31
>     July 2001.

Simmons, 694 S.E.2d at *1-2.

## DISCUSSION

A.    Motion for Summary Judgment

    1.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion

4

opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

    2.    Analysis

        a.    Fourth Amendment Claims

In his first claim, petitioner asserts that his conviction was obtained in violation of the Fourth Amendment to the United States Constitution because New Hanover County Sheriff's Department Detective L.A. Savitts ("Detective Savitts") asked Hickory Police Department Investigator Robert George to conduct an inventory search of petitioner's tool box in Hickory, North Carolina.

5

Petitioner also contends that his Fourth Amendment rights were violated for the following reasons: (1) Detective Savitts set up a telephone conversation between the victim and petitioner without obtaining a warrant; (2) Detective Savitts did not ensure the appropriate chain of custody of the items seized, and (3) law enforcement officers did not have authority to search his truck. The MAR court adjudicated these claims, and found them to be without merit.

Generally, a prisoner may not collaterally attack a state conviction on the grounds that illegal evidence was admitted at trial where the state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Stone v. Powell, 428 U.S. 465, 494 (1976); Grimsely v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982); Boggs v. Bair, 892 F.2d 1193, 1200 (4th Cir. 1989); Massey v. Ballard, No. 2:08-CV-936, 2009 WL 2916889, at *13 (S.D.W. Va. Sept. 8, 2009) ("[T]o the extent that Petitioner has contended that the tape recording of his telephone conversation with the alleged victim was an illegal search and seizure, that claim is not cognizable in federal habeas corpus because Petitioner already had an opportunity for full and fair litigation of that issue . . . ."), appeal dismissed, 363 F. App'x 243 (4th Cir. Jan. 27, 2010). Here, petitioner was provided a full and fair opportunity to raise and litigate his Fourth Amendment claims, and in fact raised them in his post-conviction proceedings. Petitioner does not dispute this fact. Based upon the foregoing, respondent's motion for summary judgment is GRANTED for these claims.[1]

---

[1] To the extent petitioner alleges that the recorded telephone call between himself and the victim constituted entrapment, petitioner fails to state a claim. "Entrapment is the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him." State v. Stanley, 288 N.C. 19, 27, 215 S.E.2d 589, 594 (1975). Because petitioner has presented no evidence that the telephone call induced him to commit a crime, he fails to state an entrapment claim.

To the extent petitioner's chain of custody claim could be construed as a claim separate from his Fourth Amendment claims, this claim is not cognizable on habeas review because it is an issue of state law. See Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding " a federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law."); Scott v. Jones, 915 F.2d 1188, 1189 (8th Cir. 1990) ("The question of whether or not a chain of custody had been shown is one of state law, and state law questions are not very often the basis of constitutional error under habeas review."); Jackson v. Warden of Broad River Corr. Inst., No. 8:09-906-MBS-BHH, 2010 WL 3282996, at *7 (D.S.C. Mar. 25, 2010) (finding chain of custody claim is not cognizable on habeas review), appeal dismissed, 413 F. App'x 614 (4th Cir. Feb. 23, 2011). Further, petitioner has not presented any evidence to support his claim or to suggest that the alleged error was so prejudicial that it violated due process. Thus, the court GRANTS respondent's motion for summary judgment as to this claim.

b. Trial Court Lacked Subject Matter Jurisdiction

In his second claim, petitioner argues that the trial court lacked subject matter jurisdiction to convict him on the count of statutory sex offense which related to State's exhibit number 32, a photograph depicting digital penetration. Petitioner challenges the trial court's subject matter jurisdiction on the ground that the photograph was taken in Brunswick County, and not New Hanover County where he was criminally prosecuted. The MAR court adjudicated this claim, and found it meritless.

Subject matter jurisdiction is an issue of state law, and any allegation that the trial court lacked jurisdiction is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); see also,

7

Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (holding jurisdiction is a matter of state law); Von Longmore v. South Carolina, No. C.A. 9:05-CV-2112-MBS, 2006 WL 2827416, at *6 (D.S.C. Sept. 27, 2006) ("Petitioner is not entitled to federal habeas relief because the subject matter jurisdiction of a state trial court is a state law issue."), denying certificate of appealability, 218 F. App'x 284 (4th Cir. Feb. 23, 2007). Additionally, the location where the photograph was taken is an issue of venue, which also is a state law issue not cognizable on federal habeas review. See N.C. Gen. Stat. § 15A-631 ("In the General Court of Justice, the place for returning a presentment or indictment is a matter of venue and not jurisdiction."); Kearns v. Hoke, No. 1:09cv156, 2011 WL 3664558, *9 (N.D.W. Va. Aug. 19, 2011) ("[T]he denial of the motion for change of venue did not affect the fundamental fairness of Kearn's trial and is not cognizable on federal habeas review."), appeal dismissed, 464 F. App'x 110 (4th Cir. Feb. 8, 2012); see also, States v. Carter, 96 N.C. App. 611, 613-14, 386 S.E.2d 620, 621 (1989). Based upon the foregoing, respondent is entitled to summary judgment for this claim.

      c.      Presentation of Perjured Testimony

In his third claim, petitioner argues that the State knowingly presented perjured testimony. In support of his claim, petitioner presented the affidavit of State's witness Jamie Redmond ("Redmond") in which she recants her trial testimony stating that petitioner confessed to her that he had sex with the victim. Resp't's Ex. 21, pp. 588-89. Redmond now states that petitioner never told her that he had sexual relations with the victim.[2] Redmond now further states that Detective Savitts told her that petitioner had sexual relations with the victim and "that if [Redmond] did not testify

---

[2] Respondent submitted evidence that Redmond is being investigated for perjury in connection with the statements she made in her sworn affidavit recanting her trial testimony. Resp't's Exs. 24, 25.

to [that fact] [she] could go to jail or lose [her] children." Compl. Attach. p. 30. The superior court adjudicated this claim, and determined that it was without merit.[3]

The state denies a criminal defendant his right to due process pursuant to the Fourteenth Amendment to the United States Constitution when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. See Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). To show that a petitioner's due process rights were violated by the presentation of false evidence, a petitioner must show that the prosecution knew that the theory or evidence was false at the time of trial. See Napue, 360 U.S. at 269. "A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." Giglio, 405 U.S. 154 (internal quotation omitted).

The record reflects that Redmond's affidavit is contrary to the trial testimony of the victim's two aunts, her close friend Courtney Abernathy, petitioner's close friend Drew Abernathy, the investigating officer, and a federal inmate, who all stated that the defendant engaged in sexual activity with the victim. Resp't's Ex. 13, p. 3. Given the overwhelming evidence of petitioner's guilt presented at trial, the presentation of Redmond's testimony, even if false, could not be considered material to the outcome of the trial.[4] Moreover, there is no evidence in the record, aside from petitioner's own conclusory allegations and Redmond's affidavit, to suggest that the State knew that Redmond provided false testimony at trial. Based upon the foregoing, the superior court's

---

[3] Specifically, petitioner presented this claim in his February 24, 2012, motion for reconsideration, which the superior court denied in a detailed order. Resp't's Exs. 12, 13.

[4] The overwhelming evidence of petitioner's guilt at trial included a September 26, 2006, telephone call between the victim and petitioner, recorded by Detective Savitts, in which petitioner discussed sexual acts and admitted telling Redmond that he and the victim had sex. Resp't's Ex. 22, pp. 622-636; Ex. 26.

9

adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In addition to his claim regarding Redmond's trial testimony, petitioner alleges a second claim regarding alleged false testimony at trial. In particular, petitioner states that the "prosecutor alleged [] that the alleged victim was (15) when petitioner allegedly took pictures of her, when in fact alleged victim told Det. Savitts in her report that she was (17) when the pictures were taken." Pet. p. 17. The MAR court adjudicated this claim, and found it meritless.[5]

The fact that witnesses provided inconsistent statements does not establish that the State knowingly used false testimony. See United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.") Further, the record reflects that petitioner's counsel cross-examined the victim at trial and that David Jones provided testimony at trial consistent with the victim's statement that the alleged abuse began when she was fifteen (15). See, Resp't's Ex. 20, p. 333-369; Ex. 21, p. 539. Finally, there is no evidence in the record to support a finding that the State knowingly presented perjured testimony. Based upon the foregoing, the court find that the MAR court's adjudication of this claim did not result in a decision that was contrary to, or involved an

---

[5] To the extent petitioner seeks an evidentiary hearing to submit new evidence to support his petition, the court notes that its review for habeas corpus purposes generally is limited to the evidence that was placed before the state court. See Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1400 n. 7 (2011); see also 28 U.S.C. § 2254(d)(2). Petitioner has not established that any exception to this general rule applies in this action. See Cullen, 131 S.Ct. at 1400-01; see also, 28 U.S.C. § 2254(e)(2). Thus, the court denies petitioner's request for an evidentiary hearing.

10

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.[6]

        d.      Ineffective Assistance of Counsel

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 687. For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. at 694. Even then, however, habeas relief may be granted under Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Sexton v. French, 163 F.3d 874, 882 (1998).

---

[6] Petitioner makes the conclusory allegations that he received ineffective assistance of counsel in connection with this claim. Because petitioner did not provide any factual support or evidence for this claim, it is DENIED. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim--or for that matter on any claim--a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999).

11

1. Request for a Limiting Instruction

In his first ineffective assistance of counsel claim, petitioner argues that his trial counsel should have requested a limiting instruction or a mistrial when the victim was permitted to testify with her back to defendant and counsel. The United States Supreme Court in Maryland v. Craig, 497 U.S. 836 (1990), held that a defendant's rights pursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution may be restricted by preventing him from confronting face-to-face the witnesses against him if the reliability of the testimony is otherwise assured and the denial of such face-to-face confrontation is necessary to further an important public policy. Id. at 850. The court in Maryland further stated that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to testing in the context of an adversary proceeding before the trier of fact." Id. at 845. "[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities through cross-examination, thereby calling to the attention of the fact finder the reasons for giving scant weight to the witness' testimony." Id. (quoting Delaware v. Fensterer, 474 U.S. 15, 22 (1985)).

In the case at hand, petitioner's counsel objected to the victim testifying with her back to petitioner and petitioner's counsel because it did not allow them to witness the victim's demeanor. Resp't's Ex. 20, p. 280. In response, the trial court instructed the victim to position herself so that petitioner's counsel could see her face, and the victim complied. Id. p. 282. As a result, counsel was afforded the opportunity to view the victim's demeanor, and was afforded the opportunity for cross examination. There is no indication in the transcript that the jury was unable to view the witness's

12

demeanor. Accordingly, the court finds that counsel's actions were not objectively unreasonable. Thus, petitioner cannot establish the first prong of the Strickland test.

### 2. Failure to Object to the Victim's Medical Records

In his second ineffective assistance of counsel claim, petitioner contends that his counsel acted unreasonably when he failed to object to the admission of the victim's medical records. The MAR court adjudicated this claim and found it to be without merit.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. Relevant evidence generally is admissible. N.C.R. Evid. 402. Courts "have interpreted Rule 401 broadly and have explained on a number of occasions that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." State v. Collins, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994) (citation omitted). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.R. Evid. 403.

In this case, the victim's medical records corroborated her testimony at trial by showing that she received medical treatment on numerous occasions due to difficulties with her reproductive organs and pregnancies. Resp't's Ex. 27. Specifically, the victim's medical records confirmed that she was pregnant several times. The records further corroborated the fact that the victim suffered medical complications only with her pregnancies which resulted from her biological relationship with her father. See Resp't's Ex. 13, p. 4. Accordingly, the victim's medical records were relevant

13

to the proceedings and their probative value was not outweighed by any other factor. Based upon the foregoing, the court finds that trial counsel's alleged failure to object to the admission of the victim's medical records was not unreasonable, and petitioner cannot establish the first prong of the Strickland test.

### 3. Testimony of Lay Witness

In his third ineffective assistance of counsel claim, petitioner asserts that his counsel was deficient for allowing a lay witness to testify in regards to the victim's medical records. With this claim, petitioner asserts that his counsel should have objected to the admission of the victim's medical records on the grounds that they were not accompanied by expert testimony. However, an expert is not required to authenticate medical records. See Doali-Miller v. SuperValue, Inc., 855 F. Supp.2d 510, 519 (D. Md. Apr. 11, 2012). Rather, medical records may be admitted through, *inter alia,* the in-court testimony of the custodian of records or another qualified witness. N.C. R. Evid. 803(6).

Here, the victim's medical records were introduced by New Hanover Regional Medical Center's custodian of records, Beth Percise. Resp't's Ex. 21, pp. 496-501. Because the medical records were appropriately introduced by the custodian of records, petitioner is unable to demonstrate that his counsel acted unreasonably.

### 4. Failure to Object to Pregnancies

In his fourth ineffective assistance of counsel claim, petitioner argues that his counsel was ineffective for failing to object, on the grounds of insufficient evidence, to the State's statement during closing argument that the victim had three pregnancies as a result of her sexual relationship

14

with petitioner.[7]  However, the victim testified at trial that she became pregnant by petitioner on three occasions.  See Resp't's Ex. 27; Ex. 20, p. 305-11.  The victim's medical records corroborate her pregnancies.  Accordingly, the court finds that, viewing the evidence presented at trial in the light most favorable to the State, there was substantial evidence presented to establish that the victim became pregnant on three occasions as a result of having sex with petitioner.  Thus, there appears to be no basis for an objection to this evidence, and petitioner has not demonstrated that his counsel acted unreasonably.

### 5. Failure to Call Witnesses

In his fifth ineffective assistance of counsel claim, petitioner argues that his counsel was deficient because he failed to call witnesses identified by petitioner.  However, courts cannot find an attorney ineffective for failing to call witnesses when, as in this case, the only evidence of the witnesses or their testimony is petitioner's conclusory statements.  See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (finding that when a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what the witness would have testified to in exculpation.") (quotations and citation omitted); Nickerson, 971 F.2d at 1136; see, e.g., Hamilton v. Arthur, No. 7:06CV00682, 2007 WL 1795690, at *8 (W.D. Va. June 21, 2007), appeal dismissed, 272 F. App'x 245 (4th Cir. Arp. 3, 2008).  Thus, petitioner has failed to establish that his counsel acted unreasonably.

---

[7] The State in closing argument summarized the victim's testimony that petitioner was the father of three of the victim's pregnancies.  Resp't's Mem. Ex. 23, pp. 813-14.

15

6. Objection to Exhibits

In his final ineffective assistance of counsel claim, petitioner claims that his counsel acted unreasonably when he failed to object to the admission of the State's exhibits 30 through 33 which depicted sexual acts between the victim and petitioner. Petitioner argues that his counsel should have objected because there was no proof that it was petitioner in the photographs. However, the record reflects that the victim testified at trial that petitioner took the Polaroid photographs of the sexual acts between her and petitioner and identified exhibits 30 through 33. Resp't's Ex. 20, p. 300-02. The Polaroid photographs were seized from petitioner's tool box. Id. Ex. 22, pp. 673, 675-78. The victim noted an identifying mark in her private area which appeared in the photographs. Id. Ex. 20, p. 302. In light of this evidence, the court finds that petitioner has not established that his counsel acted unreasonably.

Even if petitioner was able to establish the objective prong of the Strickland test for any of his ineffective assistance of counsel claims, his claims still must fail because he has not presented any evidence to demonstrate that he was prejudiced by the alleged ineffective assistance of counsel. Thus, the court GRANTS respondent's motion for summary judgment as to petitioner's ineffective assistance of counsel claims.

B. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE 5) is GRANTED. The certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 17th day of September, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge

18